NEELY *v*. PAYNE, Director General of Railroads *et al.*

[89 South. 669, No. 21777.]

1. CORPORATIONS. *Statute making certain words actionable not applicable in suit against corporation for words of its agent.*
   Section 10, Code 1906 (section 1, Hemingway's Code), by which certain words are made actionable, has no application in a suit to hold a corporation liable for words spoken by its agent.

2. PLEADING. *Each publication should be alleged in separate count.*
   Each publication of a slanderous charge presents a separate cause of action, and should be alleged in a separate count of the declaration. A demurrer should be sustained to a count containing several separate and distinct alleged publications of a slander.

3. CORPORATIONS. *Libel and slander. In action against corporation for libel, truthfulness of statements in agent's letter, or that letter was not written about its business, and within scope of employment, held good defense.*
   In a suit against a corporation for libel because of a letter written by its agent to a third party, in which the plaintiff is spoken of as being a crook and a thief, it is a good defense for the defendant to prove either, first, the truthfulness of the statements made in the letter, or, second, that the letter was not written by its agent while about the master's business and within the scope of his employment, but was merely a personal letter.

4. RAILROAD. *Federal agent suable after termination of federal control.*
   Under section 206 of the Transportation Act of Congress of Feb. 28, 1920, suits brought after the passage of this act based on causes of action arising out of the possession, use, or operation

by the President of the railroad, or system of transportation of any carrier, after the termination of Federal control, should be brought against the agent designated by the President, and not against the carrier by name.

5. RAILROADS. *Federal agent not liable for punitive damages.*
   In suits brought under this act there can be no recovery of punitory damages against the agent of the government.

APPEAL from circuit court of Hancock county.
HON. D. M. GRAHAM, Judge.

Suit by L. V. Neely against John Barton Payne, Director General of Railroads, and others. Verdict for the defendants, and the plaintiff appeals. Affirmed.

*Gex, Waller & Morse* for appellant.

All that our friends say on the facts, certainly would not be justification for the court in refusing the appellant, the right to proceed against the Louisville & Nashville R. R. Company guilty or not guilty. The plaintiff had a right to file his complaint against the Louisville & Nashville R. R. Company, and to have it heard against the company. The authorities on that subject are fully set out in our main brief.

Our friends on the other side, especially in the brief filed by the Louisville & Nashville R. R. Company contend that the first assignment of error was incorrect, because the case of *Jobe* v. *M. & O. R. R. Co.,* 84 So. 910, was not properly decided and cite a number of cases showing a different interpretation of the statute. It is interesting to note that most of these cases are by district judges, certainly by courts whose opinions are not binding, on this court.

Our friends then cite the holding of the Michigan court and another court to the effect that suit could not be brought against the Louisville & Nashville R. R. Company during the time that the Railroad was under Federal control. We might have filed many decisions from many other states holding to the contrary view, but why do it, and

worry this court with added authority when by the decision of this court, it has placed itself with those courts that hold that the act providing for Federal control, is plain on its face that provides especially that these suits shall be brought, or may be brought against the carrier itself. That our court was right on the subject is apparent from the Transportation Act of 1920. It must be remembered that in the original act, by which the President was directed to take over the railroads, no provision was made for the levying of executions under a judgment, and some sort of rule, or order was made by Mr. McAdoo, then Director General of Railways, to the effect that the United States government would pay no judgment obtained against it as operator of the railroads, unless he or his representative approved the findings of the court. Some of the courts observed this order, and others properly, justly disregarded it, as a usurpation of authority by a man who, himself, understood little, as we see it, the principles on which the American government is based; he overlooked the fact that there are three co-ordinate departments of government in this country, and that the executive department of government, not even in time of war, had a right to overrule the judiciary. It must be remembered that martial law was never declared within the borders of the United States, certainly, at least not in the state of Mississippi.

Under the existing order, the Act of February 28, 1920, was passed, and by its provisions, or sub-divisions "G" cited in our friend's brief, it will be noted that Congress recognized that the ruling of this court in the *Jobe case, supra,* was correct, because it provided that no execution could be levied on the property of any carrier when the cause of action on account of which the judgment was obtained, grew out of the possession, use, control or operation of any railroad, recognizing of course, that the railroads had a right to be sued, because, how could an execution ever issue against the property of a railroad, on a judgment against the United States government. That would

have been an absurdity on its face; so recognizing that the principles discussed in the Jobe case were properly decided, that the act providing for Federal control of railroads in itself provided that the railroads might be sued in cases such as the one under consideration and judgment obtained against them; by the Act of February 28, 1920, provided that no execution should be issued under those judgments; for the simple reason that since ultimately the government would be responsible to the railroads, and since the government itself was liable for the acts that brought about the suit. Congress wanted to provide and did provide that because of the government's misgiving, the railroad should not be directly embarrassed. Congress had this right, and it exercised it, but in the exercise of the right it interpreted its own statute, and interpreted it according to the interpretation placed on it by this court in the Jobe case, and then undertook to protect the railroads against a levy on their property before the government had an opportunity to make the railroads whole for the cause of complaint on which the particular judgment might be based. So we say that the statute cited by our friends in their brief, is sufficient to show that the Jobe case was properly decided.

This then, brings us to that particular defense, that since the Transportation Act of February 28, 1920, provided that suits filed thereafter might be brought against an agent designated by the President, for such purposes, that we could not join the railroad with that agent. How absurd; the Act of February 28, 1920, did not abrogate any right that had accrued to a litigant, by the original transportation act. It would have been retroactive law, and void on its face, if it could undertake to abrogate any right, acquired before that time. It did no such thing, and could not be so interpreted. If it did, then we say that according to the simple principles and adjudications too well known to this court to be cited, the act would have been unconstitutional.

So we say that this plaintiff had a right to proceed against the Louisville & Nashville R. R. Company as he undertook to do. That right was denied him. Therefore he did not obtain that trial or that right to present his case to the court as especially enjoined upon all courts by the constitutions, both of the state of Mississippi, and the United States.

On the second assignment of error, our friends first contend that it was well-founded, because of the fact that it proceeded under the statute, and under the case of *Fire Insurance Company* v. *Betty,* 101 Miss. 880. They say that we could not proceed against a corporation. We submit that in this they are in error, because the following cases authorize a suit of this sort, even under the statute: *A. & V. R. R. Co.* v. *Brooks,* 69 Miss. 168; *Rivers* v. *Y. & M. V. R. R. Co.,* 90 Miss. 196; *R. R. Co.* v. *Ely,* 83 Miss. 533; *Tribble* v. *Y. & M. V. R. R. Co.,* 103 Miss. 1.

But it must be remembered that the declaration was amended by striking out the statutory ground or the statement that we were proceeding under the statute, and since it charged, as amended, that we were not proceeding under the statute but proceeding under the common-law ground of slander, it was certainly error for the court to say that the count on the slander was not sufficiently explicit. A reading of the count will show that it was not defective. It charged that these boys were charged with having stolen money and being thieves. It then went on and did explain that in addition to that, reports had been made to Mr. Boykin, superintendent, to the same effect; but that was all explanatory of the unmistakable charge of theft.

We submit that on the entire record, this court is bound to conclude that the plaintiff did not receive the trial as by law he is entitled to; that he was made to proceed against defendants, not of his own choice, that these errors, regardless of what the court might think of the merits of the cause on proper trial, demand a reversal of the case.

*Carl Marshall,* for appellees.

Representing only the agent of the director general insofar as his supervision of the express business is concerned and the Southern Express Company and the American Railway Express, I beg leave to answer, for these appellees, the reply brief of the appellant only sufficiently to respectfully direct the court's attention to the fact that it clearly implies acquiescence of the appellant in the appellee's view that the trial court was correct in giving a peremptory instruction for the agent of the Director General insofar as his supervision of the express business went, and for the two express companies named in the declaration. Indeed, no other conclusion can be reached, or based upon the facts appearing in the transcript of the record. There is apparently no effort made to attach liability to the agent of the Director General as controller of the express business, or of the two express companies themselves. It was so in the trial court; the appellant so little concerning himself with these appellees as to omit mention of them, save indirectly and by inference, their names and identities not even appearing in the proof.

For these reasons it is respectfully asked that, whatever course may be adopted in the main litigation, this court will affirm the action of the learned trial judge in granting the peremptory instructions requested by the agent of the Director General as controller of express, and by the Southern Express Company and the American Railway Express, that they may not be put to the unnecessary expense of further appearing, or remaining in the action.

*Smith, Young, Leigh & Johnston,* for appellees.

In view of the recent decision of the supreme court of the United States determining the questions which are in controversy in this case, we have taken the liberty of filing this additional brief and call the court's attention thereto.

In the case of *Missouri Pacific Railway Co.* v. *Ault,* 41 Supreme Court Reporter, page 593, the supreme court of the United States, decided, on June 1st, of this year, the two points which absolutely dispose of all questions involved in the case at bar.

The supreme court of the United States held in the Ault case that a corporation could not be sued for matters arising during Federal control. This, therefore, finally determines the correctness of the trial judge in giving the peremptory instruction in favor of the Louisville & Nashville Railroad Company and in sustaining the demurrer filed by the Louisville & Nashville Railroad.

An examination of the record will show that Neely sustained absolutely no actual damages by the alleged slander. Therefore, if he was entitled to recover any damages whatever, his damages would have been in the nature of punitive damages. The supreme court of the United States in the Ault case directly holds that punitive damages cannot be recovered against the director general. The court said, on page 597:

"Whenever the law permitted compensatory damages they may be collected against the carrier while under Federal control. Such damages may reasonably include interest and costs. See *Hines* v. *Taylor* (Fla.), 84 So. 381. But double damages, penalites and forfeitures, which do not merely compensate but punish, are not within the purview of the statute. See *Hines* v. *Taylor, supra, Jackson Tweed Lumber Co.* v. *Southern Ry. Co.,* 113 S. C. 236.

We therefore, respectfully submit that the plaintiff was not entitled, under this decision of the supreme court of the United States, to recover anything of the defendant for the alleged slander.

SYKES, J., delivered the opinion of the court.

The appellant, as plaintiff in the circuit court, brought suit against the Director General of Railroads, the Louisville & Nashville Railway Company, and the American

Railway Express Company for damages for slander and libel. There are three counts contained in the declaration. As originally drawn, in the first count of the declaration the plaintiff attempted to charge a slander under the actionable word statute. Section 10, Code of 1906 (section 1, Hemingway's Code). A demurrer was properly sustained to this count because a corporation cannot be held liable under this statute. *Dixie Fire Ins. Co.* v. *Betty,* 101 Miss. 880, 58 So. 705. With the leave of court this count was amended by striking out those portions of it relating to the statutory slander, and was left as a count under the common law. The demurrers of the express and railroad companies were again interposed and sustained to this count and the demurrer of the Director General as to it was overruled. Among other grounds of demurrer to this amended count are these: First, because said count seeks to recover upon several and separate causes of action; third, because no facts are alleged showing any publication of the alleged libelous matters. This count of the declaration in substance alleges that the plaintiff was a telegraph operator in the employ of the Director General in the operation of the Louisville & Nashville Railroad; that one R. N. Blaize at the time in question was the agent of the Director General of Railroads and also of the Louisville & Nashville Railway Company and the American Express Company, at Pass Christian, Mississippi, and as such agent he had charge and control of the depot, the telegraph business and the express business at this place; that these defendants acting through their agent Blaize for the purpose of insulting and injuring the plaintiff charged him with being a thief and having stolen a sum of money; and that the agent Blaize, as agent of these defendants, several times in the presence of others made these charges. In another paragraph of this count it is alleged that the defendants, acting through Blaize, reported either by message, letter, or orally to the assistant superintendent of the Louisville & Nashville Railroad, and also to W. Graham, another employee of the defendants, and to certain officials of the express com-

pany, that the plaintiff had stolen a sum of money out of the depot, all of which charges were calculated to lead to a breach of the peace, and were insulting.

In another paragraph it is further charged that this agent, in pursuance of a desire to injure the plaintiff's reputation and good name, discharged plaintiff and took out of the pay due him the sum of twenty dollars, charging and accusing him at that time of having been a thief and having stolen this amount. It will be noted that in these three separate paragraphs of this count of the declaration it is attempted to hold these defendants liable for three or more separate and distinct publications of a slander. In the first and third instances the attempt seems to be made to charge a slander published to people not in the employ of any of these defendants, while in the second instance it is attempted to charge a slander made by an agent to other agents of the corporation. Each publication of a slanderous charge presents a cause of action, and should be stated in a separate count of the declaration. An entirely different defense, namely, that of a privileged communication, could be interposed to an alleged slander by an agent made or published to another agent of the same employer, while this defense, of course, could not be interposed where the slander is published to a stranger. It will also be noted that the attempted charges of every one of these alleged slanders are entirely too general, vague and indefinite. That different causes of action should be contained in different courts has been decided by this court in the case of *Illinois Central R. R. Co.* v. *Abrams,* 84 Miss. 456, 36 So. 542. The demurrer of the Director General should have been sustained to this amended count.

The second count of the declaration is for an alleged libel contained in the following letter written by R. N. Blaize to Leo Murtagh as follows:

"Dear Leo: Yours 12th, received. When speaking to your brother Edward I did not say that you could get your job back here, but if you would write or go and see Mr. Boykin that I would help you to get reinstated.

"As far as your innocence is concerned no one ever doubted it, but still at the same time, your actions at the time, in shielding Neeley placed you in a bad light.

"The mere fact that you confessed to Mr. Spradley and I, that you helped him reseal the package, is evidence enough of being an accomplice.

"Neely told Mr. Boykin that you enticed him into the job. You told so many conflicting stories at the time, that it would baffle any one.

"When I approached you and told you that Neely said some one else was in the office that night besides himself, meaning you, you became enraged, and said that if he accused you of having anything to do with the theft that you would knock hell out of him.

"I felt so safe and sure of your innocence after making such a statement, that I had never given you a thought about having anything to do with the robbery, but the very next morning, when you were brought face to face with Neely and Mr. Spradley you caved in, and told him that you had rifled the package with Neely, but did not take anything, and also admitted that you resealed them.

"I have letter from Neely admitting his guilt, but still insists that he was not alone in the job.

"All of my report to Mr. Bose and Mr. Boykin I have exonerated you of having anything to do with the robbery, being a victim only of circumstances, that is trying to shield a thief, and ruining your own reputation.

"Some ugly things have been said about my character by you and your mother.

"The mere fact of the whole matter is that too much talking was done by you and her.

"Accusing me of such a damnable lie as balling you out at the Greek's corner, and other things as bad is enough to make my heart turn to stone.

"What I had to tell you I told you in private in my office where no one could hear it, and if you repeated it to outsiders you made the blunders.

"If you write Mr. Boykin and ask for reinstatement, and the matter is referred to me you can rest assured that I will help you out.

"As I told you before Neely is a natural born crook, and if you had exposed him at the time, as you should have you would be working here today, instead of bearing the burden of his thievery.

"I showed Mr. Boykin some time ago all the letters received from Neely admitting his guilt, and he seems to be of the same opinion as I, that is you were led into a trap by Neely after he had already committed the crime.

"The best thing to do would be to take a trip to Mobile and explain the matter to him thoroughly, and I feel sure that he will help you out.

"Yours truly,
"(Signed).       R. N. Blaize, Agent."

The defendants claimed, first, that they would prove that the contents of this letter about the plaintiff were true; and, second, that the letter was not written by Blaize while acting as the agent of any of the defendants or within the scope of his employment. The case was submitted to the jury on this count upon these two issues, and a verdict was returned in favor of the Director General.

Briefly stated the material facts as testified to are as follows:

L. V. Neely and Leo Murtagh were in the employ of the Director General, as telegraph operators. Neely went on duty at four o'clock p. m. and was relieved at twelve o'clock by Leo Murtagh. Blaize was the station agent generally in charge of the railroad and express business. The express packages were placed in a closet which opened into the room where the telegraph operators worked, the door of this closet was usually kept closed and locked. The telegraph operators had nothing to do with the express packages and had no right to go into this closet. The testimony for the plaintiff, as detailed by himself and Leo Murtagh, is to the effect that shortly after he went on duty he noticed that the door to the closet was open, and that an express

package had become unsealed and was partially open. When Leo Murtagh relieved him at 12 o'clock he told him about this fact, and the two together took the package, put it on the table of the room where they worked, opened it, found it was some sort of a "punching board" with different kinds of prizes; among others there were several ten or twenty-dollar gold pieces made into watch fobs. The plaintiff himself testified that they noticed some of these gold pieces and also noticed that some of the prizes were missing; that he and Murtagh took nothing out of the package, and after examining it resealed it with black sealing wax and put it back in the closet. Neither of these witnesses notified any one the next morning about finding the package unsealed and about their opening and resealing it. The package was delivered to the consignee the next morning. The plaintiff, according to his testimony, happened to go into the store of the consignee just about the time the package was delivered and helped the consignee check up the missing articles. The consignee at once notified Mr. Blaize that these articles were missing. Mr. Blaize testified that the package was sealed when he left his office in the afternoon, but it was sealed with red sealing wax; that he locked the door to the express closet and left the key in a drawer in the office; that the only sealing wax in the office where these operators worked was black sealing wax. He at once began an investigation, which resulted in the questioning of these boys several times. They at first denied all knowledge of the matter, but finally admitted taking the package out of the express room, opening it, and examining its contents, but denied taking any gold pieces therefrom. One of the defendants' witnesses testified that the plaintiff admitted to him that he and Murtagh discussed taking some of the gold pieces and also a watch, but did not take them. The testimony for the defendant further showed that the adopted mother of Leo Murtagh was a sister of Mr. Blaize; that the letter was written after these men had been discharged from the service, and that the agent Blaize had nothing whatever

55

to do with the employing or discharging of telegraph operators.

The testimony further shows that both Leo Murtagh and his stepmother, Mr. Blaize's sister, were trying to get Mr. Blaize to interest himself in getting Leo Murtagh another position with the railroad. Mr. Blaize further testified that these two men admitted their guilt to him, and agreed to pay for what had been stolen from the package if he would try to hush the matter up. There is other testimony in the record, both oral and some letters written by the plaintiff to Blaize. From all of which testimony we unhesitatingly say that the jury were warranted in believing that Neely and Murtagh had taken some gold pieces from the package; in other words, that the jury could believe the truthfulness of the charges made in the letter. Second, it was a proper question for the jury to say whether or not in writing the letter Blaize was acting as the agent of the Director General within the scope of his employment, or that it was merely a personal letter. There was no error committed by the court in favor of the defendant in submitting these questions to the jury upon the second count.

The third count alleges that the agent Blaize accused the plaintiff of having stolen a sum of money from the depot; that this accusation was made to George Cronovich, marshal of the city of Pass Christian. There is no testimony whatever to support this alleged slander to Cronovich. Upon the trial of the cause the plaintiff offered to prove that the agent Blaize, in a telephonic conversation with his sister, Mrs. Murtagh, stated to her that it was a good thing these two young men had to deal with him; otherwise they would both have been behind the bars for stealing at that time. Over the objection of the defendant this testimony was excluded, because there was no specific charge in the declaration of this alleged slander. The plaintiff was denied the privilege of amending his declaration by making this charge. We think the court was correct in declining to allow this amendment during the

trial. It was another separate and distinct alleged publication of a slander, and the defendant could not have been prepared at that time to meet it. From all of the facts in the case it does not appear that the plaintiff by exercising reasonable diligence could not have ascertained that he could make such proof and have amended his declaration before the trial. The circuit court certainly did not abuse its discretion in refusing to allow this amendment.

Upon motion of the defendants, the express company and the railroad company, the suit was dismissed as to them, and only submitted to the jury with the Director General as the defendant. This action of the court was proper. This suit was brought after the passage of the Transportation Act (41 Stat. 456) by Congress. Section 206 of this act reads as follows:

"Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the president of the railroad or system of transportation of any carrier . . . of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act."

It will be noted that the above section of this act expressly provides that after the termination of federal control suits may be brought against an agent designated by the President for such purpose. This act is mandatory, and suits of this character must be brought alone against the agent designated by the President, and not against the carriers. This question is set at rest in the case of *Mo. Pac. R. R. Co.* v. *Ault,* 255 U. S. ——, 41 Sup. Ct. 593, 65 L. Ed. 647. Under this Ault Case there could not have been any recovery of punitory damages against the Director General. In this case this question was submitted to the

jury and the jury returned a verdict in favor of the defendant.

It therefore follows that the judgment of the lower court is affirmed.

*Affirmed.*