MISSOURI PAC. TRANSP. CO. v. BEARD.

(Division B. Sept. 20, 1937. Suggestion of Error Overruled Dec. 13, 1937.)

[176 So. 156. No. 32709.]

Ratcliff & Ratcliff, of Natchez, and **Hudson, Potts, Bernstein & Snellings**, of Monroe, La., for appellant.

774

Brandon & Brandon and **O. M. Hornsby,** all of Natchez, for appellee.

Argued orally by **F. G. Hudson, Jr.**, and **E. H. Ratcliff**, for appellant, and by **Gerard Brandon**, and **O. M. Hornsby**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

During the months of November and December, 1933, and for some time theretofore, four bus companies maintained a union bus station in Natchez with appellee as the agent in charge. These companies were the Teche Greyhound Lines, of which J. G. Gaston was traffic manager; the Tri-State Transit Corporation, of which W. H. Johnson was president and general manager; the Interurban Transportation Company, of which M. W. Walker was president and general manager; and appellant, of which F. K. Carkuff was superintendent.

On December 8, 1933, Mr. Carkuff wrote to the said officers of said other lines the following letter:

"Monroe, Louisiana.
"December 8, 1933.

"Mr. J. G. Gaston,
"Mr. W. H. Johnston,
"Mr. M. W. Walker.
"Gentlemen:

"Our auditor, Mr. W. K. Olmstead, in checking agent at Natchez, found him about $79.20 short. However he made remittance the same morning for $48.00 holding a balance of $38.00 not remitted.

"Due to the fact that our bond company will not permit such shortage it looks as though it will be necessary to move our station or have someone else take charge of station at Natchez. If one of us move out, there is not enough revenue in the station to keep it operating.

"Mr. G. B. Brooks who lives at Oakdale, Louisiana,

has talked to Mr. J. B. McClure, the landowner, in regards to taking over the station agency should Mr. Beard give it up. This Mr. Brooks has been recommended very highly to me, and if it is satisfactory with the other bus companies, I will talk to Mr. Brooks, and have him talk to each of you. If either of you have any man in mind that can handle the station and could accept Mr. McClure's contract, would be glad to stay in this station. I believe it is a help to all of us to maintain this Union Station. Would appreciate very much a recommendation from each of you in regards to what action should be taken in this line. It will be necessary for us to make a change in the near future.

"Very truly yours,

"[Signed] . F. K. Carkuff."

"cc-P. J. Neff."

On September 17, 1934, a suit for libel, founded upon the foregoing letter, was instituted by appellee against appellant company, and upon the trial thereof a judgment was recovered by appellee for a large sum, and appellant has prosecuted this appeal.

A considerable portion of the briefs for both sides is devoted to the question whether the letter constituted a libel, and, if so, whether it was libelous per se or libelous per quod. Conceding that it was libelous, Great Atlantic & Pacific Tea Co. v. Majure, 176 Miss. 356, 167 So. 637, 168 So. 468, we are of the opinion that the question whether it was libelous per se or libelous per quod is immaterial, for in either event it was qualifiedly privileged. It is definitely settled in our decisions, as well as in the general jurisprudence of the country, that a statement, whether oral or written, not excessive or intemperate in its language, made without malice and in good faith on a subject-matter in which the person making it and the person to whom it is made have a legitimate common interest, is privileged on the ground of public policy. The presumption of good faith arises as to such privileged communications, and the burden of

showing malice or bad faith is cast upon the plaintiff. Louisiana Oil Corp. v. Renno, 173 Miss. 609, 157 So. 705; Gardner v. Standard Oil Co. (Miss.), 175 So. 203.

The term "malice," as used in this connection, relates to the state or condition of mind of the person who speaks or writes the defamatory words, and means that the person who writes or speaks is actuated by ill will or spite or hatred, or else that he spoke or wrote with a wanton and reckless disregard of whether the words were true or not. Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 238, 166 So. 335.

The proof is that Mr. Carkuff was, and at all times had been, friendly with appellee, and at no time entertained any ill will or spite, or hatred against him. Nothing to the contrary is attempted to be asserted even by appellee himself in his testimony, and is admitted in one of the briefs filed in his behalf. And as to the issue of wantonness or recklessness, which at the same time involves the issue of good faith on the part of Carkuff, it was assumed as a fact by both sides throughout the trial that Olmstead did make the report substantially as stated in the letter. Appellee himself stated that "the result of Mr. Olmstead's audit is set forth in that letter," and appellee in his said brief admits that such a report was made by the auditor; but appellee says that the report was made by the auditor to the general manager of appellant company at St. Louis—as to which latter there is not a word of evidence in the record. So far as there is any evidence to the contrary, the report may have been made direct to Mr. Carkuff. The auditor, Olmstead, had been engaged as an auditor for twenty-six years, eighteen of which were in the employ of appellant company. This length of service raises a presumption of his competency and reliability. Moreover, some of the admitted testimony shows without substantial dispute that on several previous occasions there had been discrepancies disclosing apparent shortages upon audits of appellee's financial accountability to ap-

pellant company, which both Olmstead and Carkuff had treated with patience and forbearance, each of them offering suggestions and aid to appellee for the elimination of these irregularities. In this connection, although, as observed, sufficient evidence was admitted so far as the purposes of the present record is concerned, it was erroneous for the court to refuse to admit the full testimony offered as to previous audits and reports, as this evidence had a material bearing upon the question of good faith and want of malice. Without discussing the facts further but taking all of them into view, we are of the opinion that Mr. Carkuff was entitled to rely upon the auditor's report—that in doing so he was guilty of no bad faith, and that so far as any malice or want of good faith on the part of Carkuff is concerned, no cause of action exists against appellant company.

We have not overlooked the purport of the argument, stressed in appellee's principal brief and in the oral presentation, that the letter by Carkuff was the result of a scheme hatched in the general office of appellant company in St. Louis to get rid of appellee as the agent of the said companies at Natchez; that the general manager at St. Louis had directed the auditor to go to Natchez and make a prejudged audit and to report such an audit to the general manager, and when this was done Carkuff was directed by the St. Louis office to write the letter as a part of said scheme. We have carefully read this record, not once but several times, and we fail to find therein any substantial evidence of facts which would dependably support any such conclusion. We must pronounce it as a surmise or conjecture; and as we have often said in this court, surmises or conjectures are not sufficient to support a verdict and judgment.

As we see this case, the only way that a recovery might be had by appellee, if at all, would be for him to declare, not upon the letter written by Carkuff as the foundation of his suit, but upon the publication by Olmstead of his said audit and that the letter by Carkuff,

as to which as an original proposition there is no liability, was merely a republication or conduit of a libel originated. and committed by Olmstead, an authorized agent of the company acting within the scope of his duties. Since the report of his audit was also qualifiedly privileged, it would be necessary to show that the auditor acted maliciously or in bad faith, as is required to be shown in respect to other communications of qualified privilege. The statements contained in this paragraph are not to be considered, however, as the law of the case, nor do we decide whether an amended declaration would be necessary, but we call attention to Neely v. Payne, 126 Miss. 854, 89 So. 669. And we do not decide whether an amendment, if necessary, would fall within the one year's statute of limitations. We refer to the matters mentioned in this paragraph as reasons for our judgment of reversal and remand, rather than a judgment of reversal and dismissal.

Along with the considerations mentioned in the preceding paragraphs of this opinion, we add that the judgment must be reversed, because there are no substantial facts in this record upon which, under familiar rules, a verdict which includes punitive damages, as does this verdict, can be sustained; and because the special damages allowed under the instructions for injury to appellee's agency business cannot be sustained, the evidence having fully disclosed that the defamatory part of Carkuff's letter was not the proximate cause of said special damages; that is to say, had the first two paragraphs of the letter been omitted, the same result would have followed. Undoubtedly Carkuff had a right to write the following paragraphs and no action could be sustained as to those paragraphs whatever the result thereof was. And because of the confusion in the record as to whether the joint audit as made by Olmstead and Evans, the latter being the auditor for the Teche lines, was fully admitted in evidence, and because of several other errors, which we do not specifically mention here

because not likely to arise in a new trial—except that we do call attention to the several instances in which as to material matters the trial judge reserved ruling, a practice which as to trials before juries has been expressly disapproved by this court in Warren v. State, 174 Miss. 63, 70, 164 So. 234.

Joint audits are admissible in evidence when each auditor personally appears as a witness, as was done in this case, and swears to the correctness of the portion done by him. If this were not allowable, many audits in the business world, as well as of public agencies and institutions, could not be expeditiously made. There is no reason for a requirement that an audit is inadmissible unless made entirely by one person; and such is not the rule of law, the maxim being that the common law goes no further in any of its principles or rules than the reasons therefor. And when an audit has been so made by more than one person, one or more of them may be interrogated as experts in regard to the summaries and finished results and is not to be confined solely to the part done by him, otherwise juries might be left without proper guide or appreciation as to the summaries or finished results.

Reversed and remanded.