SMITH *v.* BYRD

No. 39755          November 7, 1955          83 So. 2d 172

332

*Vardaman S. Dunn, Watkins, Edwards & Ludlam,*
Jackson, for appellant.

*King & King,* Durant, for appellee.

LEE, J.

Richard F. Byrd, Sheriff of Holmes County, brought this action in libel for damages against Mrs. Hazel Brannon Smith, the owner and editor of the Durant News and the Lexington Advertiser, two weekly newspapers, on account of the publication in said newspapers of a news item concerning the plaintiff on July 8, 1954, and an editorial comment thereon in the issue of July 15, 1954.

The news item was as follows:

"A 27-year old Holmes Negro was shot in the left leg after being told to 'get goin' by Holmes County Sheriff Richard F. Byrd, according to reports received by this newspaper.

"The Advertiser has not been able to reach Sheriff Byrd in his office for a statement on the shooting.

"According to witnesses of the shooting which took place about midnight Saturday on highway 49-E in Tchula, Sheriff Byrd came driving up where a group of Negroes were congregated and asked one of them what he meant by 'whooping'. When the Negro replied that he had not whooped Sheriff Byrd was reported to have cursed and struck the Negro on the head.

"When the Negro raised his hand to ward off further blows Sheriff Byrd was reported to have pulled out his gun and told the Negro to 'get goin', whereupon the man started running. At this time Sheriff Byrd was reported to have fired his gun several times, one of the bullets entering the left thigh of the victim from the rear and passing through the leg to the front.

"The victim of the shooting was not pursued further by the Sheriff, reports indicated.

"No charges have yet been filed against Sheriff Byrd in the shooting.

"The matter is expected to be presented to the Holmes County Grand Jury in October."

The editorial was as follows:

."Last week we carried in the news columns of this newspaper a shocking account of how a colored man in Holmes County was shot through the leg after being told to 'get goin' by Sheriff Richard F. Byrd. The man was shot in the back. He was running only because he had been told to 'get goin' by the sheriff. He had not violated any law — the Sheriff was not trying to arrest him for any offense. He just made the one mistake of being around when the Sheriff drove up."

It was averred that the facts and comment in the publications charged the plaintiff with the commission of a crime by shooting the Negro from the back, and that such statements were false and libelous.

The answer of the defendant admitted the publications. It denied that they were untrue; and on the other hand,

asserted that they were true. It expressly denied that they were published out of malice. It pled privilege; that the defendant had reasonable cause to believe that the plaintiff intentionally pointed a pistol at and toward the Negro, not in self-defense or in the lawful discharge of official duty, and discharged the same; and that the publications were made in good faith, without malice, in the honest belief that they were true, as a legitimate news story, and in the discharge of a duty of the press to publish news concerning matters of public interest and concern.

The cause was submitted to the jury, and it returned a verdict for $10,000.00. From the judgment entered, Mrs. Smith appealed.

Late in the night of July 3, 1954, Sheriff Richard F. Byrd, his deputy I. C. Farmer, Bob Gillespie, constable of the district, and J. A. Love, a Highway Patrolman, got together for the purpose of clearing out the congested traffic on Highway 49-E, in a Negro section known as Cox Town, in the Town of Tchula, and for the purpose of getting the people home. The officers were in a highway patrol car which was driven by Love. As they proceeded along the street, crowded with Negroes on both sides, someone in a group of five or six Negroes, said, "There goes the law." One particular Negro said: "G-- D-- the G-- D-- law, who cares?" The Sheriff told the patrolman to stop. However the street was so congested that he did not do so, but drove up the street 100 or 150 yards, turned around and came back near the place where the words had been spoken. As soon as the car stopped, the Sheriff got out and asked the same group of Negroes "Why in the hell are you raising hell and hollering like you are doing?" The Sheriff testified that the Negro, who had done the cursing, looked at him and said that he was not raising hell or hollering. Immediately the Sheriff reached for the Negro and hit him at the same time with a blackjack. Gillespie had gotten out

of the car, when the Sheriff had disembarked, and was standing six to ten feet behind. As the Negro ran, Gillespie said, "get back", and fired several shots. Henry Randle, a Negro, was struck by a bullet in the back of his leg. Farmer testified that about forty or fifty Negroes seemed to be coming across the street just before Gillespie said "get back". Love, not seeing the shooting, asked the Sheriff, on his return to the car, what happened; and his reply was that the Negro ran. Both Byrd and Farmer testified that Gillespie did the shooting. Love did not know who fired the shots; and Gillespie did not testify. Henry Randle and several other Negroes, testified that it was Byrd who fired the shots.

The injured Negro was taken first to Dr. Kazar's office, but as the doctor could not be located, medical aid was later administered by Dr. D. R. Minter, who found that a bullet had passed through the thigh from back to front, but that it missed the bone. The wound was bleeding at the time. He also observed a small swollen area on the head, with contusions, which he called a "goose egg". He smelled no odor of liquor and Randle appeared to be perfectly sober.

Mrs. Smith testified that her linotype operator first told her about the rumor on Tuesday afternoon. She immediately called the sheriff's office to ascertain the facts, but the sheriff was not in the office. However she left word for him to call her. The next day she called the sheriff again at his office, during the day and at his home that night, but without success. In all she said that she called him six or seven times. She also called both Patrolman Love and Officer Gillespie. Love promised to talk with her about the matter, but she was never able to get up with him. On the third telephone call to Gillespie he claimed that he did not know anything about the occurrence and said that he did not wish to be dragged into it as he was going to run for office. She talked to Henry Randle, who gave her the facts as she printed them

in her newspapers. She called A. C. Conger, the marshal of Tchula, about the matter and was advised by him that Randle was a Negro of good character. She had no malice against the Sheriff. In fact he had been very co-operative with her at all times theretofore. She believed that she obtained the true facts of the matter and she printed them in good faith. As a newspaperwoman, she conceived that it was her duty, through her papers, to give the public the news, and this she did in the utmost good faith. After the news item was published and the Sheriff made no complaint about it, she assumed that it accorded with his version of the facts, and she thereafter made the editorial comment on July 15th.

In Natchez Times Pub. Co. v. Dunigan, 72 So. 2d 681, the Court called attention to the definition of libel per se as set out in Conroy v. Breland, 185 Miss. 787, 189 So. 814, and cases there cited, as follows: "At common law any written or printed language which tends to injure one's reputation, and thereby exposes him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se." The opinion also reaffirmed the rule announced in Rodgers v. Kline, 56 Miss. 808, and Jarnigan v. Fleming, 43 Miss. 710, that if the article is libelous per se, proof of a malicious intent is not necessary to sustain the action; and also that it is not necessary to allege or prove special damages, because the law presumes damages per se from the writing of the libelous words. Doherty v. L. B. Price Mercantile Co., 132 Miss. 39, 95 So. 790; Conroy v. Breland, supra, and other authorities there cited.

Language is actionable per se when a crime is falsely charged. Taylor v. Standard Oil Co., 184 Miss. 392, 186 So. 294. See also Great A. & P. Tea Co. v. Majure, 176 Miss. 356, 167 So. 637, 168 So. 468; Oakes v. State, 98 Miss. 80, 54 So. 79. Compare also Sheffield v. Journal Pub. Co., 211 Miss. 294, 51 So. 2d 479.

But the prevailing rule in this state is that the truth of the matter alleged to be defamatory, whether in slander or in libel is a good defense. Neely v. Payne, 126 Miss. 854, 89 So. 669; Conroy v. Breland, supra.

If Henry Randle spoke the profane words in the presence of two or more persons at the time and place in question, he violated the criminal law. Section 2291, Code of 1942. Of course the sheriff had the right then and there to arrest Randle, without a warrant, for such offense committed in his presence. Section 2470, Code of 1942. However no arrest was made at the time. The car drove off and came back. The sheriff did not then apprise Randle that he was arresting him, or inform him of the object and cause of an arrest. Section 2470, supra. Instead he asked, "Why in the hell are you raising hell and hollering like you are doing"? When Randle replied that he was not raising hell or hollering, the sheriff grabbed at him and struck him with a blackjack. Under the Sheriff's own statement, this was an unlawful assault. Besides, as the assaulted Negro ran away, either the Sheriff or Gillespie shot him in the back. It was not shown that it was necessary to strike the Negro with the blackjack or shoot him in order to effect an arrest, or to save themselves from great personal harm. Holland v. Martin 214 Miss. 1, 56 So. 2d 398, 58 So. 2d 62.

Under the facts in this record, there was no justification whatever for hitting the Negro with the blackjack or shooting him. Craft v. State, 202 Miss. 51, 30 So. 2d 507; Hubbard v. State, 202 Miss. 229, 30 So. 2d 901. And since the blow and the shot were both unjustified, it follows that the Negro was unlawfully assaulted in both instances. 4 Am. Jur., Assault and Battery, Sections 2 and 3, pages 124-6.

"There are no accessories in misdemeanors. All those who aid or abet the commission of misdemeanors are principal offenders." State v. Treweilder, 60 So. 1015. Likewise all accessories, before the fact, in felonies are deemed principals. Section 1995, Code of 1942.

When the alleged profanity was uttered in the presence of the officers and they returned, the Sheriff got out of the car with Gillespie immediately behind him, with the purpose undoubtedly of aiding and abetting the sheriff in dealing with the Negro. Although Gillespie did not testify, he must have seen the sheriff strike the Negro with the blackjack and must have seen the Negro run. If Gillespie fired the shots, manifestly he did so in aiding and abetting Sheriff Byrd who had, just moments before, struck the Negro, and the shots were fired toward the Negro as he was fleeing.

Byrd and Gillespie were engaged in the common purpose of clearing the street, getting the people home, and dealing with this Negro. Consequently it is immaterial which of the two fired the shot which struck Randle. Brown v. Weaver, 76 Miss. 7, 23 So. 388; Johnson v. Cunningham, 107 Miss. 140, 65 So. 115; Oliver v. Miles, 144 Miss. 852, 110 So. 666; Moore v. Foster, 182 Miss. 15, 180 So. 73.

A consideration of the facts in evidence, viewed most favorably for the sheriff, leads to the conclusion that the two publications substantially recited the circumstances under which Randle was struck and shot; and only substantial accuracy is required. 53 C. J. S., Libel and Slander, Section 122, page 201.

The right to publish the truth, with good motives, and for justifiable ends, is inherent in Section 13, Article 3, Constitution of 1890, which is as follws: ''The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence, and the jury shall determine the law and the facts under the direction of the court; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted.''

Proof of the substantial truth of a publication, made with good motives and for justifiable ends, is a com-

plete defense to an action of libel. Neely v. Payne, supra; Conroy v. Breland, supra.

Under the testimony of the officers themselves, the news item and editorial comment in question appear to be substantially true, and the plaintiff was, therefore, not entitled to recover anything. The defendant's requested peremptory instruction should have been sustained. It follows that the judgment of the trial court must be reversed and a judgment must be entered here for the appellant.

Reversed and judgment here for appellant.

*Kyle, Holmes, Arrington* and *Ethridge,* JJ., Concur.