# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01914-SCT

*REX P. ARMISTEAD*

*v.*

*BILL MINOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/14/2000 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM E. SPELL |
| ATTORNEYS FOR APPELLEE: | LUTHER T. MUNFORD |
| | MARK DAVID FIJMAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/09/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/2002 |

**BEFORE SMITH, P.J., DIAZ AND EASLEY, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On April 12, 1999, Rex P. Armistead ("Armistead") filed this defamation suit for damages in the Circuit Court of the First Judicial District of Hinds County against newspaper columnist, Bill Minor ("Minor"), and several Mississippi newspapers. Armistead claimed that he was defamed by an April 1998 newspaper column authored by Minor. The defendants moved for summary judgment. On April 18, 2000, the circuit court granted the defendant newspapers' motion for summary judgment. Armistead then voluntarily dropped the newspapers from the case. On September 11, 2000, the circuit court granted defendant Minor's motion for summary judgment. Aggrieved by this ruling, Armistead now seeks review in this Court.

¶2. We hold that summary judgment was proper because the gist or substance of the article was substantially true and because Armistead, a public figure, offered no evidence of actual malice by Minor. We, therefore, affirm the trial court.

## FACTS

¶3. Bill Minor writes a column entitled "Eyes on Mississippi," which is regularly published in newspapers around the State. In April of 1998, Minor devoted his column to a discussion of Armistead's history of being involved in scandals and investigations. This column was sparked by a report in *The Commercial Appeal* (a Memphis newspaper) discussing Armistead's involvement in "The Arkansas Project."[1] The article had noted that Armistead had been paid $250,000 to act as an investigator for the Project. Armistead claims that Minor's column contained false statements that damaged his reputation.

## STANDARD OF REVIEW

¶4. This Court applies a de novo standard of review of a trial court's grant or denial of summary judgment. *Hudson v. Courtesy Motors, Inc.*, 794 So.2d 999, 1002 (Miss. 2001); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000). Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure, which states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact..." *Hudson*, 794 So.2d at 1002; *Jenkins*, 794 So.2d at 232; *Heigle*, 771 So.2d at 345. The burden of demonstrating that no genuine issue of fact exists is on the moving party. *Id*. "The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...[T]he existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Hudson*, 794 So. 2d at 1002 (quoting *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994)). Cases that deal with first amendment issues, such as libel cases call for closer scrutiny upon review. As this Court has observed,

> In cases of this constitutional character, the Court employs a heightened standard of review. In determining the sufficiency of the evidence to pass constitutional muster, the appellate court must make an independent review of the evidence. "We must 'make an independent examination of the whole record,' ... so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." *Gulf Publ'g Co., Inc. v. Lee*, 434 So.2d 687, 696 (Miss.1983) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). *See also Time, Inc. v. Pape*, 401 U.S. 279, 284, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 11, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967); *Long v. Arcell*, 618 F.2d 1145, 1147 (5th Cir.1980) ("our duty is to make an independent examination of the evidence and determine whether there was a clear and convincing showing of actual malice"); *Meridian Star, Inc. v. Williams*, 549 So.2d 1332, 1335 (Miss.1989), *overruled on other grounds, Roussel v. Robbins*, 688 So.2d 714 (Miss.1996).

*Journal Publ'g. Co. v. McCullough* 743 So.2d 352, 359 (Miss. 1999).

## DISCUSSION

¶5. Armistead designates three issues on appeal. First, he argues that there was a genuine issue of material fact, and thus summary judgment was inappropriate. Second, he contends that the trial court made findings

of fact and invaded the province of the jury. Third, he asserts that the trial court abused its discretion. Minor contends that summary judgment was appropriate. First, he asserts that Armistead presented no evidence of actual malice to the trial court. Second, he avers that the statements qualify as substantially true. Finally, Minor argues that Armistead was not defamed by these statements. Armistead's issues can all be summarily discussed within the general topic of whether summary judgment was appropriate.

¶6. Armistead cites the following statements, which appeared in Minor's column, as being libelous:[2]

> Armistead's odoriferous background in Mississippi, ranging all the way from head-bashing of black civil rights workers to concocting a bizarre homosexual scandal in an attempt to defeat a gubernatorial candidate.

> He gained notoriety around 1960 by leading a posse of heavily armed officers who riddled the farm house of a holed-up black farmer alleged to have earlier waved his shotgun to chase a deputy off his land.

> Armistead was banished from the patrol headquarters by new Gov. Bill Waller in 1972 and put on the road in north Mississippi.

> There, Armistead was involved in an ugly incident in which some black civil rights workers in the Marshall County area were beaten up at a highway roadblock.

> What was not said, however, was that Armistead as a paid private eye, had dredged up the transvestites and had them relate their story of having had sex with Allain.

¶7. To establish a claim for defamation, a plaintiff must prove the following elements:

> (1) a false and defamatory statement concerning plaintiff;

> (2) unprivileged publication to third party;

> (3) fault amounting at least to negligence on part of publisher;

> (4) and either actionability of statement irrespecitve of special harm or existence of special harm caused by publication.

*Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998) (citations omitted). Due to his status as a public figure, Armistead is faced with the challenge of proving the additional burden of proving actual malice by clear and convincing evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2428, 115 L.Ed. 2d 447 (1991); *Franklin*, 722 So. 2d at 692. As he does not contest this status, there is no need for this Court to question it. "Actual malice is defined as a statement made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id*. (citations omitted) . The circuit court made various findings in granting Minor's summary judgment motion. This Court agrees that the trial court invaded the province of the jury, in some of these findings. This, however, was harmless as the right result was reached based on other findings.

¶8. In applying the libel-proof doctrine to Armistead, the trial court inappropriately stepped into the role of the jury. "The libel-proof plaintiff doctrine reasons that when a particular plaintiff's reputation for a particular trait is sufficiently bad, further statements regarding that trait even if false and made with malice, are not

actionable because, as a matter of law, the plaintiff cannot be damaged in his reputation as to that trait." *Church of Scientology Int'l v. Timer Warner, Inc.*, 932 F. Supp. 589 (S.D.N.Y. 1996) (citing *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986); *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639-40 (2d Cir. 1975), *aff'd sub nom*. *Church of Scientology v. Behar*, 238 F. 3d 138 (2d Cir. 2001)). As the trial court noted, some courts have found that granting summary judgment based on the libel-proof doctrine is appropriate. *See Kevorkian v. American Med. Assoc.*, 602 N.W.2d 233 (Mich. Ct. App. 1999). Other courts, however, have found that such action is not appropriate because "it requires the Court to make factual findings regarding plaintiff's reputation for a particular trait." *Timer Warner*, 932 F. Supp. at 594. This Court adopts the latter approach, as the libel-proof doctrine requires a look at the plaintiff's current reputation. While it may be said that some reputations are easily assessed, it still requires consideration of credibility issues, and this is not something the trial judge should undertake. *Stegall v. WTWV, Inc.*, 609 So. 2d 348, 352-53 (Miss. 1992), *See also Zerangue v. TSP Newspapers*, 814 F.2d 1066, 1074 (5th Cir. 1987) ("[S]ummary judgment is not an appropriate stage at which to resolve credibility questions."). Thus, the trial court's finding that Armistead was libel-proof was an abuse of its discretion.

¶9. While the finding that Armistead was libel-proof was inappropriate, the ultimate conclusion reached by the trial court is still correct. Summary judgment was appropriate under Mississippi's law regarding libel. This Court has defined a defamatory statement as "[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." *Id*. (quoting *Fulton v. Mississippi Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986) (citation omitted)). Further, "[t]he statement must have clearly been directed toward the plaintiff, and 'the defamation must be clear and unmistakable from the words themselves and not be the product of innuendo, speculation, or conjecture.'" *Id*. (quoting *Ferguson v. Watkins*, 448 So. 2d 271, 275 (Miss. 1984)).

¶10. The issue of whether the offending words are defamatory may be decided by the trial court without submission to the jury. *Lawrence v. Evans*, 573 So. 2d 695, 697 (Miss. 1990) (citing *Fulton v. Mississippi Publishers Corp.*, 498 So. 2d at 1217). "The threshold question in a defamation suit is whether the published statements are false." *Franklin*, 722 So. 2d at 692 (citing *McCullough v. Cook*, 679 So. 2d 627, 631 (Miss. 1996)). Truth is a complete defense to an action for libel. *Blake v. Gannett Co.*, 529 So. 2d 595, 602 (Miss. 1988) (collecting authorities). The plaintiff bears the burden to prove such falsity. *Id*. (*Reaves v. Foster*, 200 So. 2d 453 (Miss. 1967)). This Court only requires that the statements be "substantially true." *Id.* at 603 (citing *Smith v. Byrd*, 225 Miss. 331, 83 So. 2d 172, 174 (1955)). As the United States Supreme Court has noted, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' Put another way, the statement is not considered false, unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. at 517, 111 S.Ct. at 2433 (1991) (citations omitted). The trial court found that Minor's statements regarding Armistead were substantially true. As the trial court stated, "Minor's assessment concluding that Armistead's law enforcement and race relations reputation for nearly 40 years...were fundamentally accurate." Further, the court noted that "[i]f there were any mischaracterizations of Armistead's activities and reputation by Minor, they appear to be little more than editorial form, rather than substance." Following a review of the record, this Court finds that the trial court was correct at least as to the bulk of the statements.

     Armistead's odoriferous background in Mississippi, ranging all the way from head-bashing of black

civil rights workers to concocting a bizarre homosexual scandal in an attempt to defeat a gubernatorial candidate.

¶11. This statement is a general summary of Minor's take on Armistead's history. The first portion regarding treatment of civil rights workers is supported by various published statements, including Armistead's own report submitted to former Governor Paul Johnson. These statements include reports regarding Armistead's involvement in the 1970 Jackson State University stand-off between police and student protestors. Further, Armistead submitted his own report to Johnson regarding the beating of an African-American student by a white student at the University of Mississippi. In this report, Armistead suggests that the Campus Chief of Security, who arrested the white student, only listened to liberals and that the University would be benefitted by his removal. As to the portion of the statement regarding the concocting of a scandal, this allegation has been reported numerous times in various publications. While Armistead denies this allegation, he has admitted involvement in the situation, and this Court finds that this portion of the allegation is substantially true.

He gained notoriety around 1960 by leading a posse of heavily armed officers who riddled the farm house of a holed-up black farmer alleged to have earlier waved his shotgun to chase a deputy off his land.

¶12. There are newspaper accounts, and reports prepared by Armistead and other officers regarding this incident. Armistead admits being involved in the stand-off and firing his weapon. It appears the only thing that he would have to object to is the wording, however, this does not alter the fact that this statement is substantially true.

Armistead was banished from the patrol headquarters by new Gov. Bill Waller in 1972 and put on the road in north Mississippi.

¶13. An article from *The Commercial Appeal* reported this same fact, and quoted Governor Waller as saying "I did it, but I don't know why I did it." Armistead submitted a note to the trial court from him to a supervisor regarding a need for a transfer due to his mother's illness.

There, Armistead was involved in an ugly incident in which some black civil rights workers in the Marshall County area were beaten up at a highway roadblock.

¶14. Armistead discusses this allegation in his affidavit to the trial court. In it, he describes an incident on a public highway, which followed a traffic stop.

What was not said, however, was that Armistead as a paid private eye, had dredged up the transvestites and had them relate their story of having had sex with Allain.

¶15. As noted above, it was widely reported in books and newspapers that 1983 gubernatorial candidate Bill Allain stated Armistead was a key player in this scandal. Further, Minor submitted an affidavit from a former producer of the television show 20/20, in which the producer stated Armistead had approached him regarding a story on this scandal. In it, he states that Armistead intimated that he was the contact person to interview the prostitutes. Thus, while disputed by Armistead, this statement has the ring of substantial truth.

¶16. This Court finds that while not all of the statements made by Minor have an adequate basis of fact in the record, the burden to disprove these statements rests not on Minor, but rather on Armistead. Armistead

relies on his own denials to serve as proof that the statements are false. This does not counteract the bulk of articles and reports regarding the majority of the incidents discussed within the alleged libelous statements. Further, taking into consideration the entire article and the reported truth regarding Armistead's actions as a member of law enforcement in Mississippi, and as a private investigator, it cannot be said that the questionable statements would have "a different effect on the mind of the reader" from the unvarnished truth.

¶17. Beyond this, due to his public figure status, Armistead carries the added burden of showing actual malice by Minor. "A person's ill will or personal spite will not, standing alone, support a finding of actual malice." *Franklin*, 722 So. 2d at 693 (citation omitted). Armistead must have presented evidence that Minor made a false publication with a "'high degree of awareness of...probable falsity,' or must have 'entertained serious doubts as to the truth of his publication.'" *Id*. (citations omitted). In the case at bar, Minor is the author of a column, which appears regularly in several newspapers across the state. This column discusses issues and events, but clearly encompasses the author's opinion regarding such things. While it may be evident that Minor does not hold Armistead in high regard, such feelings do not amount to actual malice. Armistead put forth no evidence before the trial court to suggest actual malice. Further, ample publications support the gist of what Minor caused to be published regarding Armistead.

## CONCLUSION

¶18. This Court finds that summary judgment was proper because the bulk of the published statements are substantially true, and Armistead put forth no evidence of actual malice. The trial court's judgment is affirmed.

**AFFIRMED.**

> **PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., NOT PARTICIPATING.**

1. "The Arkansas Project" was a project devoted to investigating information regarding former President Bill Clinton. The majority of its financing appears to have come from right-wing millionaire, Richard Mellon Scaife, who headed up the American Spectator Foundation.

2. In his initial complaint, Armistead cited the statement that "Armistead had created himself as a pistol-totin' town marshal of Lula" as libelous. In his brief on appeal, however, Armistead does not mention the statement characterizing him as a "pistol-totin' town marshal." In its place, he divides the first statement into two separate statements.