COTTON'S HOLSUM BAKERS, INC., et al. *v.*
SMITH'S BAKERY, INC.

No. 41807          May 29, 1961          130 So. 2d 570

*Benton & Moseley,* Baton Rouge, La.; *Brandon, Brandon, Hornsby & Handy,* Natchez, for appellants.

*Inge, Twitty & Duffy,* Mobile, Ala.; *Laub, Adams, Forman & Truly,* Natchez, for appellee.

GILLESPIE, J.

The decisive question in this case is whether appellee abandoned the use of the trademark "Holsum" on yeast raised bakery products sold and distributed within a certain area of South Mississippi. We hold that the chancellor was justified in finding that it had not abandoned the use of said trademark.

The appellee, Smith's Bakery, Inc., herein referred to as Smith, filed this suit in the chancery court on October 9, 1952. Smith sought to perpetually enjoin appellants, Cotton's Holsum Bakers, Inc., and Cotton's, Inc., affiliated firms, herein referred to as Cotton, from

using the trademark "Holsum" in a certain trade territory in South Mississippi, referred to hereafter as the disputed area, and for damages for alleged infringement of said trademark.

The record in this case is lengthy and contains much that is unnecessary to decide the questions presented on this appeal. The arguments made by Cotton are predicated on theories of fact which the chancellor justifiably rejected. We state the ultimate facts only in the light most favorable to the successful party below, Smith.

Smith began using and exploiting the trademark "Holsum" in connection with bread and other bakery products in the disputed area in 1948, and it is conceded that it made the prior use of said trademark and the right to the exclusive use thereof prior to the time Cotton entered the disputed area with bakery products bearing the trademark "Holsum" beginning about January 1951. During the period from 1948 to January 1951, Cotton was distributing bakery products in the disputed area under trademarks other than "Holsum", but in areas not involved in this suit, Cotton had been distributing for a long period of time bakery products under the trade name "Holsum".

Smith had extensively advertised the trademark "Holsum" and had spent large sums of money in doing so. Effective March 11, 1950, Smith entered into a contract with Quality Bakers of America Cooperative, Inc., a firm which promotes the trademark "Sunbeam" on bakery products and which renders various services to independent bakers. Beginning shortly after March 11, 1950, the Board of Directors of Smith decided to make a combined use of the trademark "Sunbeam" and the trademark "Holsum" on bread and other bakery products. It also used several other trademarks on specialty or secondary items. Beginning March 11, 1950, Smith began to advertise the trademark "Sunbeam" more than it did "Holsum". It had already established "Holsum"

in its trade area and "Holsum" was a well-known and well-advertised trademark. The trademark "Sunbeam" was unknown in the territory serviced by Smith's several bakeries and it began extensive advertising of the word "Sunbeam". Beginning shortly after March 11, 1950, the white bread distributed in the disputed area by Smith was contained in wrappers with the trademark "Holsum Sunbeam" each of the said two words appearing in letters of equal size, both of which were large letters and prominently displayed on the decorated wrapper, and this wrapper was used on white bread until approximately April 1951, and during said period various other bakery products such as hamburger buns, frankfurter buns, raisin bread and others, continued to be sold and distributed in wrappers or boxes containing the word "Holsum" as the identifying trademark. Beginning April 1951, the white bread distributed by Smith in the disputed area was sold in a wrapper with the trademark "Sunbeam" in large letters underneath which in small letters were the words "A Holsum Product" and white bread has been thereafter sold in such wrapper in the disputed area until the time of the trial in this case which began on August 18, 1958. Also during that period of time Smith sold secondary bakery products such as buns of various sorts under the trademark "Holsum", some under the trademark "Sunbeam" and various other trademarks. At one time it put out a loaf of white bread, which was a small loaf, selling two for twenty-nine cents, under the name of "Holsum". The chancellor was justified in finding and did find that from 1948 to the date of trial Smith continuously distributed in the disputed area bakery products bearing the trademark "Holsum". Cotton began distributing its bakery products, including white bread, in some of the disputed area about January 1951, and in other parts at various dates thereafter. It had theretofore been competing with Smith in the disputed area under

the trademark of "Mrs. Cotton's Bread" and various other trademarks.

Upon conclusion of the hearing, the chancellor made nineteen specific findings of fact and conclusions of law in which he incorporated the facts above stated. He also found that Smith never intended to abandon the trademark "Holsum" and has never done so; that Cotton entered the disputed area with its products in 1951 and the use by Cotton of the trademark in the disputed area will confuse and deceive the public; that Smith acquired the right to use the trademark "Holsum" in the disputed area by prior appropriation and use; that the combined use of the trademarks "Holsum" and "Sunbeam" did not create an illegal monopoly or illegally restrain trade; that the use of the trademark "Holsum" was not intended by Smith to be a negative use thereof; and that complainant was entitled to the injunction prayed for, and he ordered it issued. He allowed an interlocutory appeal to settle the principles of the case without assessing damages to Smith. Cotton appeals.

Cotton argues that if there was not an abandonment in fact of all use of the trademark "Holsum" on white bread, the principal product of Smith, for a period of about a year following March 11, 1950, that the subsequent use of wrappers for white bread with the trademark "Sunbeam" thereon in large letters and the words "A Holsum Product" in small letters, was not a bona fide use of the trademark "Holsum"; that it constituted a mere negative use of the trademark, and was not intended to build up goodwill for the name "Holsum"; and that such inconsequential use constituted an abandonment of the trademark and caused it to lose its significance as an indication of origin. We are of the opinion that these arguments and all others made by the appellant, Cotton, are grounded on facts not established to the satisfaction of the chancellor. Every issue in this

case is resolved against Cotton by specific findings of fact by the chancellor. Therefore, it would serve no good purpose to cite and discuss the various cases relied upon by the appellants. In final analysis, Cotton's argument is based on the contention that the chancellor's findigs of fact are manifestly wrong, but we find no merit in this contention.

Affirmed.

*Lee, P.J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.