**HARDY BROTHERS BODY SHOP, INC., a Mississippi Corporation, and Wayne Gressett d/b/a Wayne Gressett Body Shop, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. 3:92–cv–368WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 30, 1994.

James W. Nobles, Jr., Jackson, MS, for plaintiffs.

Richard D. Gamblin, Wise, Carter, Child & Caraway, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") for summary judgment pursuant to Rule 56(b)[1] of the Federal Rules of Civil Procedure. By its motion, State Farm avers that it is entitled to judgment on all of plaintiffs' claims by virtue of the undisputed facts and applicable law. The plaintiffs oppose the motion.

### I. INTRODUCTION

At the center of this controversy is State Farm's Auto Damage Claim Policy. Before announcing this Policy, State Farm surveyed automobile repair shops in the Jackson, Mississippi, area for several years in order to obtain information concerning repairs, inspections, billing practices, and minimal equipment needs of auto repair shops. Based upon this survey, State Farm says that it then identified certain practices, procedures, and methods which would better ensure quality repairs to State Farm insured vehicles. Thereafter, beginning in August of 1991, State Farm invited local repair shops to sign a form pledging to meet certain criteria consisting of ten items deemed by State Farm to be essential for the performance of quality repairs. State Farm places the names of those repair shops which pledge to follow the criteria on a list which State Farm calls a "reference guide." In the event a vehicle owner insured by State Farm requests assistance in choosing a suitable repair shop, State Farm provides the insured vehicle owner with a copy of this reference guide. If the insured vehicle owner chooses a repair shop not listed in the reference guide, a State Farm representative advises the insured vehicle owner by telephone or in person that the repair shop chosen is not one

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

 (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

listed in the reference guide. State Farm then sends a letter to the insured vehicle owner which confirms the conversation concerning the non-listed repair shop. The letter states, among other things, that the repair shop chosen is not listed in the reference guide and that State Farm may not be able to assist the insured vehicle owner should the repairs not meet the insured vehicle owner's expectations.

The plaintiffs, Hardy Brothers Body Shop, Inc., (hereinafter "Hardy Brothers") and Wayne Gressett Body Shop (hereinafter "Wayne Gressett") are automobile body shops doing business in Jackson, Mississippi. According to the plaintiffs, State Farm's reference guide policy conditions claim payments for covered vehicles upon an insured's agreement to use designated repair shops selected by State Farm, in violation of Miss. Code Ann. § 83–11–501 (Supp.1993);[2] constitutes an unfair trade practice, in violation of Miss.Code Ann. § 75–24–5(b), (c), (e) and (h);[3] and amounts to a restraint of trade, in violation of Title 15 U.S.C. §§ 1 & 2. Fur-

thermore, say plaintiffs, State Farm's giving of form letters to its insured vehicle owners constitutes libel and slander against those repair shops not appearing in the reference guide and, moreover, amounts to a tortious interference with the business and contractual relations of those shops.

This case was removed to this court from the Circuit Court for the First Judicial District of Hinds County, Mississippi, pursuant to Title 28 U.S.C. § 1441.[4] The court's jurisdiction is predicated upon diversity of citizenship and an amount in controversy exceeding $50,000.00, 28 U.S.C. § 1332.[5] Pursuant to *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the applicable substantive law for this dispute is taken from the forum in which this federal court sits, the State of Mississippi. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983). As stated earlier, before the court is State Farm's motion by which it moves for summary judgment under Rule 56, Federal Rules of Civil Procedure.

---

2. MCA § 83–11–501 provides:
 No insurer may require as a condition of payment of a claim that repairs to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop; provided, however, that the most an insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that such vehicle or glass could be properly and fairly repaired or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured.

3. MCA § 75–24–5(b), (c), (e) and (h) provide:
 The following unfair methods of competition and unfair or deceptive act or practices in the conduct of any trade or commerce are hereby prohibited:
 (b) Misrepresentation of the source, sponsorship, approval or certification of goods or services; and
 (c) Misrepresentation of affiliation, connection, or association with, or certification by another;
 (e) Representing that goods or services have sponsorship, approval characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
 (h) Disparaging the goods, services, or business of another by false or misleading representation of fact.

4. Title 28 U.S.C. § 1441(a) and (b) provide:

 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

5. Title 28 U.S.C. § 1332(a) provides in pertinent part:

 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
 (1) citizens of different States.

By this motion, State Farm contends that there are no genuine issues of material fact as to any of the plaintiffs' claims and that the applicable law supports a judgment in its favor. For the reasons which follow, this court is persuaded to grant the motion.

## II. PERTINENT FACTS

### a. The Auto Damage Claim Policy (ADCP)

Prior to August of 1991, State Farm routinely conducted surveys of automobile body shops in the Jackson, Mississippi, metropolitan area in order to obtain information regarding their equipment, billing practices, percentage mark-up on used parts, and their hourly labor rates. State Farm claims that its purpose in accumulating this data was to determine the "prevailing competitive price" on labor and parts which State Farm would be obligated to its insureds to pay for auto repair in the event of collision or other damage and to identify practices, procedures, and methods which would assist State Farm in fulfilling its contractual obligations to its insureds.

In August of 1991, State Farm initiated in the Jackson, Mississippi, metropolitan area its Auto Damage Claim Policy ("ADCP" or "Claim Policy") as part of a nationwide program relating to the handling of vehicle property damage claims. This program, different in certain material aspects from any of State Farm's prior programs, is explained in a State Farm Claim Supervision Manual dated August 1, 1991. That manual, at "Article No. 8," contains forms for letters, surveys, and agreements to be used in implementing and effecting the ADCP policies outlined in the manual.

At the heart of the program is State Farm's "Repair Facility Criteria Survey Form" (hereinafter the "survey form") which, according to State Farm, is the result of its intensive probe into the practices, methods, and costs of the area automobile repair shops. This survey form, says State Farm, consists of ten criteria which, if agreed to by automobile shops, promise to ensure quality repairs of State Farm vehicles. The ten ADCP Repair Facility Criteria listed on the survey form are as follows:

1. The repairer agrees to follow ethical and professional business practices in its business conduct with State Farm representatives and our mutual customers.

2. The repairer agrees to perform repairs which serve to restore the damaged vehicle to a preloss condition relative to safety, function and appearance and further agrees to warrant such repairs, including refinishing, in writing, for a period of not less than one year from date of completion of repairs.

3. The repairer agrees to perform all repairs according to the itemized repair estimate or as subsequently approved by State Farm and agrees to employ repair/replacement techniques as described in the itemized repair estimate. If such repair/replacement techniques are found to be unnecessary to restore the damaged vehicle to a safe, preloss condition as described above, the repairer agrees to notify State Farm of any proposed deviation prior to repairs and to obtain approval as to the technique to be utilized and agreement as to costs to be incurred.

4. The repairer agrees to bill only for repairs when and as performed.

5. The repairer agrees that charges including, but not limited to, towing, storage, tear down and sublet repairs will follow those that are usual and customary in the market area.

6. The repairer agrees to use quality replacement non-OEM (original equipment manufacturer), used, rebuilt or reconditioned parts only if such parts meet the following criteria:

New non-original equipment manufacturer parts must have the name, mark or logo of the manufacturer affixed or ascribed so as to be visible, where practicable, after installation. There must be assurance that parts will perform for fit and finish to a level which is at least equal to the original equipment manufacturer part being replaced.

CAPA certified parts shall be deemed in compliance.

New non-original equipment manufacturer outer sheet metal parts must be backed by a written limited warranty against perforation rust-through for as long as the part is owned by the first retail user; for other new non-original equipment manufacturer parts, the warranty terms must provide protection which is not less that the vehicle owner would receive upon electing to replace with a new, original equipment part.

7. The repairer agrees to allow a representative of State Farm to inspect vehicles on the repairer's premises during normal business hours for the purpose of writing estimates and to confirm that repairs are being completed as specified on the estimate.

8. The repairer agrees that all disagreements as to repair cost, techniques, method, parts, or materials will first be brought to the attention of, and a sincere effort made by the repairer to resolve with, the local State Farm management person in charge of the claim file.

9. The repairer has the following operable equipment/capability:

a. A measuring device suitable for symmetrical or asymmetrical structural dimensions.

b. Electrical or hydraulic equipment needed to perform multiple repair pulls on frame and unibody vehicles.

c. A gas metal arc welder (GMAW) which will be used in appropriate repair situations.

10. The repairer agrees that all sublet repairs will be performed in accordance with the repair facility criteria.

State Farm says it provides this form, along with a description of the ADCP, to all repair shops of which it is aware. According to State Farm, if a repair shop meets and agrees with State Farm's "repair facility criteria," that shop is listed on the "Repair Facility Reference Guide." The Jackson area Reference Guide, therefore, contains the names of all body shops in that area which meet and agree with the criteria. The Reference Guide, says State Farm, is updated on an annual basis at least.

State Farm's reasons for implementing the ADCP are allegedly set out in Exhibit A to State Farm's motion for summary judgment and are stated generally in the first four pages. These proffered reasons emphasize State Farm's need to ensure and encourage quality repairs to State Farm insured vehicles. However, says State Farm, a firm underlying tenet of the Claims Policy is that the vehicle owner (an insured or claimant) has the right to choose the shop where his or her vehicle will be repaired (as set out on page 1 (par. 3) and page 2 (par. 2 and 7) of Exhibit A).

State Farm notes that the ADCP recognizes that some repairers sublet their basic frame correction work to specialists (see criterion # 10). Nevertheless, State Farm says it is still its policy to require that, "[T]here must be suitable equipment available on-site to at least measure and analyze the damage, to make multiple pulls on sheet metal, and to weld HSLA steel." (Claim Supervision Manual, Article # 8, page 21). State Farm says it has good business reasons for utilizing this "on-site equipment" standard (see criterion # 9), and it applies its criteria equally to all vehicle body shops. Moreover, claims State Farm, since the time it has introduced and used these criteria under the ADCP in the Jackson, Mississippi, area, State Farm has seen a significant reduction in the number of problems State Farm's insureds and State Farm have had with repairs. In particular, says State Farm, it has witnessed a significant reduction in insureds' complaints relative to: quality body shop repair; the frequency with which State Farm has had to go back to body shops to have them correct or reperform a repair job; and having to pay twice to have repairs done correctly.

**b.** ***State Farm's Letter and Verbal Statements to Claimants***

According to State Farm, when an insured contacts one of the two State Farm Claims Offices in the Jackson area, the insured is asked by a State Farm claims representative which repair shop the insured plans to use. If the insured names a body shop that is not on the Reference Guide, State Farm says its claims representative tells the insured that this repairer is not so listed. Additionally,

says State Farm, the claims representative gives the insured a form letter confirming that the insured was told that the repairer selected is not listed in the State Farm Reference Guide.

From the Fall of 1991 to the Fall of 1992, the form letter, signed by the claims representative, stated:

As I explained to you, State Farm has asked repair facility owners and operators to agree to certain guidelines we think are essential to ensure quality repairs. Many repairers have agreed to these standards, or criteria, and their names are listed in a reference guide which we maintain to assist customers who request our help in selecting a repairer.

You are entitled to authorize repairs at any repair facility. However, as I explained, the repairer you have indicated (_____) is not listed in State Farm's reference guide. Therefore, if repairs do not meet your expectations for any reason, we may not be able to assist you as effectively as we would like.

It is important that you understand this: The amount we pay for repairs to your vehicle will be limited to the amount of the State Farm estimates which you received and any supplement approved by us. In other words, we will not pay additional amounts we do not feel are justified.

I urge you to review our estimate with your repairer *before* authorizing repairs. This confirms our discussion. Should you have further questions, please feel free to contact me.

Beginning in the Fall of 1992, the form letter stated:

This letter will confirm our conversation about your selection of a repair facility and payment of your claim.

We do not have a preferred provider program, however, we do have the names of repairers who have agreed to comply with State Farm's Repair Facility Criteria. You are free to select any repair facility you wish.

The repairer you selected is not on State Farm's list. This is not a reflection on the quality of their work. However, we may not be able to help you as effectively as we would like.

The most we will pay for repairs is the amount of our estimate and any supplements agreed to by us.

Please review our estimate with your repairer. If you have any questions, please contact me.

State Farm asserts that it clearly instructed all of its claims representatives in their conversations with State Farm insureds to track the language stated in the form letters, especially, says State Farm, the language which reminds the insureds that the repair work may be performed at any shop the insured selects.

#### c. The Method of Paying Claims

State Farm admits that its method of paying claims when the repairer is listed in the reference guide is different from the method of payment followed when the repairer is not so listed. If the insured says he or she is taking the damaged vehicle to a body shop that has agreed with State Farm's Repair Facility Criteria, State Farm makes its check for the amount of the estimate, payable to the insured and to the body shop. On the other hand, when an insured chooses a repair shop not on the reference guide, State Farm makes its check for the amount of the estimate, payable to the insured and the lienholder.

State Farm explains its rationale for the different procedures as follows. When an insured opts to have repairs made at a shop which has agreed to State Farm's Criteria, State Farm says it is confident of certain assurances, to wit: a good working relationship with the shop as evidenced by the shop's agreement that the shop has certain minimal equipment; that the listed shop will not charge for parts and work that are not provided; and that the listed shop will give a one year guaranty on all repair work. On account of these assurances, State Farm says that it believes that it is sufficiently protected from any claims by lienholders for inadequate repairs. So, in this instance, State Farm states it will make checks payable to the insured and the shop, rather than the lienholder, because of the above assurances

which it believes gives it personal leverage with that shop.

Otherwise, State Farm says it does not believe it has such assurances for the protection of itself or the lienholder if the selected shop will not or cannot agree to the Repair Facility Criteria. In this instance State Farm says that it believes it is better protected from any claims of lienholders for unsatisfactory repairs if the check is made payable to the insured and the lienholder. Hence, if the insured indicates that the damaged vehicle will be taken to a shop that is not listed in the Reference Guide, State Farm says it will make the check payable to the insured and, if applicable, the lienholder for the amount of the shop's estimate. State Farm insists that it follows this policy because it is legally required to protect the interest of any lienholder indicated on the insured's automobile insurance policy.

## III. THE HARDY BROTHERS CLAIMS

### a. Violation of MCA § 83–11–501 (Supp.1993)

According to the plaintiff Hardy Brothers, the ADCP is an attempt to undermine small repair shops in the Jackson, Mississippi, market area by placing upon them a certification requirement that many small repair shops are unable to meet. This is made especially evident, says Hardy Brothers, by the requirement of Item No. 9 on the Repair Facility Criteria form—"electrical or hydraulic equipment needed to perform multiple repair pulls on frame and unibody vehicles." As State Farm's Claim Supervision Manual explains, this requirement ". . . means the repairer *actually has such equipment available for use on the premises and has technicians available who are trained in its use.*" (Emphasis in the original). Hardy Brothers states that it has not had this or any compa-

rable equipment in its shop at any time from 1991 to the present. Instead, Hardy Brothers says it sublets all of its frame straightening work to another body shop because it does not want to incur the cost of purchasing and keeping such equipment.

Because Hardy Brothers did not have that equipment, or any comparable equipment set up on its premises, State Farm says that Hardy Brothers was not and has not been listed on State Farm's Repair Facility Reference Guide for the Jackson area.[6] State Farm says it has advised Hardy Brothers that this is the only reason Hardy Brothers was not listed in the Reference Guide in 1991 or 1992.[7]

Hardy Brothers says it has no problem with the other criteria on the form. Moreover, Hardy Brothers admits that the repair shop of co-plaintiff Wayne Gressett is listed in the Reference Guide despite not having the expensive frame equipment Hardy Brothers believes State Farm's Repair Criteria to require. Nevertheless, Hardy Brothers argues to this court that it is unreasonable for State Farm to require that the equipment listed at Item No. 9 of the Repair Criteria be on the repairer's premises when work of this nature may be sublet to other qualified repairers. Therefore, charges Hardy Brothers, by imposing this and other unreasonable criteria on small repair shops which result in their exclusion from the Reference Guide, and by making checks payable to the insured and lienholders when an insured selects a non-listed shop, such as Hardy Brothers, State Farm is dictating to its insureds who they must choose as a repairer. This practice, says Hardy Brothers, violates § 83–11–501,[8] Mississippi's statutory prohibition against an insurer requiring its insureds to have damaged vehicles repaired at particular repair shops as a condition of payment.

---

6. Diane Ivy Andrews, an estimator for State Farm, says in her deposition that she told Jack Hardy that Hardy Brothers did not have to install expensive frame repair equipment. Instead, if Hardy Brothers would just set up its portable jacks where two pulls could be made at once, this, said Andrews, would qualify Hardy Brothers to be listed in the State Farm Reference Guide. (Deposition of Diane Ivy Andrews, p. 18, lines 10–24).

7. In depositions of certain State Farm personnel, Hardy Brothers attempted to establish that the reason Hardy Brothers was not listed in the Reference Guide was because Hardy Brothers refused to use what are called "after-market parts." However, this effort was unsuccessful.

8. *See* footnote 2.

**b.** *Libel, Defamation, Slander*
*per se and Disparagement*

Hardy Brothers charges that State Farm engaged in business slander when it told its insureds that Hardy Brothers was not listed in the Reference Guide and later sent the insured what Hardy Brothers believes to be a disparaging form letter confirming the oral statements. While contending that the form letter is disparaging, Hardy Brothers raises no contention that anything stated in the form letter is false. Instead, Hardy Brothers contends that oral statements by various claim representatives in conjunction with the statements contained in State Farm's form letter combined to intimate that Hardy Brothers (or any other shop not listed in the Reference Guide) "could not be trusted to perform substantial repairs because [the shop] did not meet State Farm's self-created criteria." Complaint ¶ 7, p. 4.

According to the plaintiffs' answers to interrogatories, State Farm personnel told several Hardy Brothers' customers that Hardy Brothers lacked the equipment and expertise necessary to perform quality repairs and that any supplemental claims for hidden damage would not be paid if the damaged vehicle was taken to Hardy Brothers. (See answer to Interrogatory No. 8). Although Hardy Brothers contends that several customers were told disparaging things, Hardy Brothers submits just two affidavits of Hardy Brothers customers, those of David Lingle and Bruce A. Currie, who say that State Farm attempted to steer them away from Hardy Brothers and to another repair shop. Despite what they may have been told by State Farm, Lingle and Currie had their respective vehicles repaired at Hardy Brothers. Both further acknowledge that their repair claims were paid by State Farm.

Hardy Brothers contends that one Scott Neeley was steered away from Hardy Brothers due to some disparaging remarks of State Farm personnel. However, this court has no affidavit from Scott Neeley to support this assertion. On the other hand, State Farm has submitted the affidavit of one Benny Hughes, a claims specialist with State Farm, who claims that he was the claims specialist who dealt with Scott Neeley. According to Hughes, Neeley and State Farm disagreed over State Farm's estimate for the repair of the hood of Neeley's automobile. Hughes claims that he and Neeley never discussed where the hood was to be repaired. Instead, says Hughes, Neeley was aggrieved over State Farm's initial decision to repair the hood rather than to replace it. Eventually, says Hughes, State Farm agreed with Neeley and replaced the hood. Hughes denies that someone at State Farm disparaged Hardy Brothers by terming Hardy Brothers as a "shade tree" operation.

In response to plaintiffs' defamation claims, State Farm avers that statements made by claims representatives to insureds who chose a repair shop not listed in the Reference Guide simply echoed the statements contained in State Farm's form letter. And, nothing stated in the form letters, says State Farm, is malicious or untrue. Furthermore, says State Farm, the insured was always told that repair work could be performed at any shop the insured selected.

In support of the above assertions, State Farm submitted the deposition of Elizabeth Ann Carlock, a claims handler for State Farm who deals directly with insureds. According to Carlock's deposition, an insured can take a damaged vehicle anywhere the insured chooses. (Deposition of Ann Carlock, page 11, lines 13–21). When asked by an insured why Hardy Brothers was not listed in the Reference Guide, Carlock says she replied, "They (Hardy Brothers) do not have frame equipment, that they (Hardy Brothers) do beautiful work." (Deposition of Ann Carlock, page 48, lines 1–9). Carlock avers that she never told an insured that State Farm will not do business with certain repair shops, or that supplemental claims will not be honored if submitted from shops not listed in the Reference Guide. (Deposition of Ann Carlock, page 24, lines 2–22).

**c.** *Unfair Trade Practices*

Hardy Brother's unfair trade practices claim is based on Miss.Code Ann. § 75–24–5(b), (c), (e) and (h) (see footnote 3). According to the plaintiffs' brief in response to State Farm's motion for summary judgment, Mississippi's Fair Trade Practices Act was violated when State Farm misrepresented and

disparaged the business capabilities of Hardy Brothers, both orally and by sending the confirmation form letter. Thus, the plaintiffs' claim that State Farm engaged in unfair trade practices is closely tied to the plaintiffs' claims of slander *per se,* defamation and disparagement.

#### d. *Restraint of Trade*

The plaintiffs' complaint charges that State Farm attempts to dictate and control the body shops to which State Farm insureds' vehicles are taken for repair; that State Farm attempts to control prices for labor and materials charged for repairs as to State Farm Insured Customers; that State Farm conducts surveys in order to certify the body shops in the Jackson, Mississippi, market area; and that State Farm attempts to control the type and cost of replacement parts which auto body shops use. However, the plaintiffs' brief in opposition to State Farm's motion for summary judgment apparently relies upon these assertions alone, as plaintiffs have failed to flesh out these contentions with market data.

#### e. *Tortious Interference with Business Opportunities*

Hardy Brothers asserts this claim in the plaintiffs' complaint, but neither plaintiff offers argument or authority in support of this claim.

### IV. *THE WAYNE GRESSETT CLAIMS*

In the plaintiffs' joint brief opposing State Farm's motion for summary judgment, Gressett asserts that his wife was told by a State Farm employee during a telephone conversation the Wayne Gressett's Body Shop was not listed in the Reference Guide between August 1, 1991, and December of 1991. Thus, counsel for the plaintiffs submits that Wayne Gressett's claims mirror those of Hardy Brothers for this time period.

The parties agree that plaintiff Wayne Gressett returned to the Jackson area and opened his body shop business around April 1991 and that he was not listed in the existing telephone book until much later. State Farm says that when it finally learned Gressett was in business, it gave him the survey and Repair Facility Criteria forms, which Gressett agreed to and signed on December 4, 1991. State Farm says his form was received by State Farm on December 5, and Gressett, who had the minimum equipment, was listed on State Farm's newly revised Repair Facility Reference Guide four days later. The parties agree that Gressett's shop has been on the Repair Facility Reference Guide at all times since then. Still, Gressett seeks damages for the August–December period of 1991.

### V. *THE CURRENT STATUS OF THE PLAINTIFFS*

State Farm says that when its survey was conducted in the fall of 1992, Gressett again completed it, but Hardy Brothers did not complete either the body shop survey or the Repair Facility Criteria Survey form. Also, says State Farm, Hardy Brothers still does not have even the minimal frame equipment. Thus, says State Farm, Hardy Brothers has neither agreed to nor met the State Farm Repair Facility Criteria.

### VI. *FINDINGS*

#### a. *Has the ADCP Been Enjoined in Other Jurisdictions?*

Contending that State Farm's Claims Policy has been enjoined in another jurisdiction, the plaintiffs have submitted to this court the case of *State Farm Mutual Automobile Insurance Co. v. Jafbros Incorporated,* 109 Nev. 926, 860 P.2d 176 (1993). In *Jafbros,* the lower court imposed an injunction against State Farm's ADCP with no finding either that State Farm was liable for some tortious act or that the plaintiff therein had suffered any injury. At the time the plaintiffs *sub judice* initially cited this case in their arguments, the *Jafbros* case was on appeal to the Supreme Court of Nevada. The Supreme Court of Nevada subsequently ruled that the lower court's decision to impose the injunction was premature since the lower court had never determined what activity of State Farm, if any, was actionable. Accordingly, the Supreme Court of Nevada remanded the case to the trial court for trial on the merits in order to determine whether State Farm's conduct in any way infringed on the plain-

tiff's rights. Therefore, the contentions of plaintiffs *sub judice* that State Farm's ADCP was enjoined by the State of Nevada in the *Jafbros* case is in error. The plaintiffs have not cited to. this court any cases from any other jurisdiction wherein a court has enjoined the ADCP.

### b. *Violation of MCA § 83–11–501 (Supp.1993)*

 Mississippi Code Annotated § 83–11–501, effective July 1, 1989, provided that, "[n]o insurer may require as a condition of payment of a claim that repairs to a damaged vehicle must be made by a particular contractor or motor vehicle repair shop." [9] According to the plaintiffs' view of the case, State Farm's activities violate § 83–11–501 because State Farm has entered into agreements only with certain chosen repair shops and because State Farm has placed certain alleged onerous conditions of payment of claims to non-Reference Guide shops designed to inconvenience the insured vehicle owner who chooses those shops. According to plaintiffs, State Farm's practice of making payable its checks to the insured and lienholders, instead of to the insured and the body shop, is aimed at pushing its insured to choose Reference Guide shops in order to sidestep the delay which might arise upon involving a lienholder.

This court has considered the plaintiff's contentions, but is unpersuaded that the plaintiffs have established a violation of the statute. The statute provides that no insurer may require as a condition of payment of a claim that repairs must be made by a particular contractor or motor vehicle repair shop. There is no proof that State Farm has required its insureds to have their damaged vehicles repaired at a particular shop or that State Farm has conditioned payment of claims upon whether the repairs are performed at any particular shop. Plaintiffs actually acknowledge these facts. Further, the record, depositions, briefs and arguments before this court establish that Hardy Brothers presently is performing repair work for State Farm insureds and that State Farm is paying for the work. Similarly, plaintiff Wayne Gressett admits in his deposition that State Farm has never refused payment for work done at his body shop. (Deposition of Wayne Gressett, page 79, lines 11–21). Moreover, plaintiffs present no evidence to contradict State Farm's contention that the ADCP in no way interferes with the right of an insured to select the repair facility where the damaged vehicle will be taken.

Finally, the court finds nothing about State Farm's method of paying claims which would require an insured to have repairs done by a particular repair shop as a condition of payment. There is no proof that this method occasions "delay," and certainly no proof that this "delay" is so extended that it compels insureds to steer clear of shops not listed in the Reference Guide.

 Therefore, this court finds that plaintiffs have failed to show that State Farm has violated the terms of § 83–11–501. The subject matter covered by § 83–11–501 was unknown at common law. The jurisprudence of statutory construction counsels that legislation creating liability where no such liability existed at common law should be construed most favorably to the person or entity subjected to the liability. Accordingly, such liability should not be extended beyond that which is clearly indicated by the express terms or by the necessary implication from the language used. *Prewitt v. Walker*, 231 Miss. 860, 97 So.2d 514 (1957). Guided by these principles of statutory construction, this court refuses to expand the language and thrust of § 83–11–501 to embrace the circumstance *sub judice* which is beyond its kin. Thus, this court holds that the plaintiffs' claim that State Farm's ADCP violates MCA § 83–11–501 is without merit.

### c. *Slander Per Se*

 A publication is *per se* defamatory if it tends to injure another in his trade, business or profession. *Sheffield v. Journal Publishing Company*, 211 Miss. 294, 51

---

**9.** The amendment to § 83–11–501, effective July 1, 1992, extends the statute's coverage to glass repairs and replacements and provides that an insurer shall be required to pay only the lowest amount charged for particular repairs within a reasonable geographic or trade area. This amendment is not relevant to the instant dispute.

So.2d 479, 481 (1951). The plaintiffs are auto body repairers. Therefore, for a publication to be libelous in the case *sub judice,* the publication must be such as would injure the plaintiffs in their auto body repair business-es. Charges of incompetence, for instance, if made with malice, may serve as a basis for a defamation action. *Holland v. Kennedy,* 548 So.2d 982, 987 (Miss.1989).

■ To prevail on their claim of defama-tion, plaintiffs must prove the following: a false and defamatory statement concerning the plaintiffs; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and either actionability of the statement irrespec-tive of special harm, or the existence of some special harm caused by the publication. *Ese-lin–Bullock & Associates Insurance Agency, Inc. v. National General Insurance Compa-ny,* 604 So.2d 236, 241 (Miss.1992); *Wise v. Scott,* 495 So.2d 16, 20–21 (Miss.1986). In defamation actions, then, the threshold ques-tion with which a court is faced is whether the published statements are false. *Blake v. Gannett Co.,* 529 So.2d 595, 602 (Miss.1988).

The plaintiffs in their brief in opposition to State Farm's motion for summary judgment do not contend that any statements contained in State Farm's form letters are false. In-deed, in his deposition, Jack Hardy, one of the principals of Hardy Brothers, admits that the statements in the letters are true, or that Hardy Brothers has no reason to believe them to be untrue.

■ In *Chatham v. Gulf Publishing Co.,* 502 So.2d 647 (Miss.1987), the Mississippi Supreme Court recognized two restrictions upon an action for defamation:

> The words used must have been clearly directed at the plaintiff.... [and] the defa-mation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjec-ture.

*Id.* at 650, quoting *Ferguson v. Watkins,* 448 So.2d 271, 275 (Miss.1984). *Accord Blake v. Gannett Co.,* 529 So.2d 595, 603 (Miss.1988). The libelous words must be susceptible of only one meaning and that meaning must be an opprobrious one. *Lawrence v. Evans,* 573

So.2d 695, 698 (Miss.1990); *The Meridian Star v. Williams,* 549 So.2d 1332, 1334 (Miss. 1989). If the reader must struggle to see how and whether they defame, by definition the words are not defamatory in law. *Fulton v. Mississippi Publisher's Corporation,* 498 So.2d 1215, 1217 (Miss.1986).

■ As acknowledged by the plaintiffs themselves, the State Farm form letters do not contain false statements. Hence, the threshold element for words to be libelous or defamatory is not established. The principal communications contained in the form letters are that the selected repairer is not listed in the Reference Guide, a true statement, and that State Farm may not be able to help with unsatisfactory repairs if the repairer is not listed, an opinion. Opinions cannot be the subject of a defamation suit. *The Meridian Star v. Williams,* 549 So.2d at 1335, citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974).

In a recent case involving State Farm's ADCP, *Taylor's Auto Body Shop, Inc. v. State Farm Mutual Automobile Insurance Company,* Civ. A. No. 92–0035–C, 1993 WL 350179 (W.D.Va.), a federal district court, applying Virginia law, found that State Farm had the right to communicate with its in-sureds; that State Farm's form letter con-tained truthful information—that the plaintiff was not on its reference list; and that State Farm did not act improperly by informing its insureds of this fact, especially where body shops are at liberty to accept or reject State Farm's Repair Criteria, and the insured was free to select repairs at a repair facility of his choosing. This court reaches the same con-clusion here relative to State Farm form letters and State Farm actions thereto.

■ The plaintiffs also base their defama-tion claim upon the affidavits of David Lingle and Bruce A. Currie. In their affidavits, these two State Farm insureds say that State Farm attempted to steer them away from Hardy Brothers. However, they additionally admit that they went to Hardy Brothers for the performance of repairs on their respec-tive vehicles, notwithstanding anything which might have been said to them by State Farm personnel concerning the ADCP or the Ref-

erence Guide. Hence, the only two affidavits submitted by the plaintiffs show only that State Farm's customers were not dissuaded from dealing with Hardy Brothers. These affidavits, then, do not show that the plaintiffs were injured in their trade, business or profession by State Farm's form letters or any other conduct. *Henry v. Collins,* 253 Miss. 34, 158 So.2d 28 (1963), *rev'd on other grounds,* 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965) (law enforcement officers); *Sheffield v. Journal Publishing Company,* 211 Miss. 294, 51 So.2d 479, 481 (1951); *Great Atlantic & Pacific Tea Company v. Majure,* 176 Miss. 356, 167 So. 637 (1936) (grocery business); *Rodgers v. Kline,* 56 Miss. 808, 31 Am.Rep. 389 (1879).

Therefore, in view of the foregoing authority, the court finds that the plaintiffs' claims of slander *per se,* disparagement, defamation, and libel of the plaintiffs' trade or business are not meritorious claims and must be rejected.

### d. *Unfair Trade Practices*

■ Inasmuch as the plaintiffs' claims of unfair trade practices rest heavily upon the assertions of disparagement, libel, slander, and misrepresentation, this court finds no violations of Miss.Code Ann. § 75–24–5(b), (c), (e) and (h) for many of the reasons above stated with regard to the slander and defamation issue. This court is unpersuaded by the evidence presented that State Farm made misrepresentations concerning certification of any automobile repair services; that State Farm represented itself as a certification authority for such services; that any such services had approval, status or certification that they did not have; and/or that State Farm disparaged the plaintiffs' services by false or misleading representations of fact. The affidavits, depositions, and other documents presented by the plaintiffs simply do not establish that State Farm was engaged in any deceptive acts or practices prohibited by § 75–24–5.

### e. *Restraint of Trade*

Miss.Code Ann. § 75–21–1 prohibits "trusts or combines" to restrain trade.[10] Title 15 U.S.C. § 1, Section 1 of the Sherman Antitrust Act, provides in pertinent part that, "[e]very contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

The plaintiffs' complaint makes several assertions regarding what they believe may constitute restraint of trade. However, as the court has already concluded, State Farm's ADCP does not require that its insureds must have their damaged vehicles repaired by a particular shop or shops in the Jackson, Mississippi, market area.

■ Next, plaintiffs have not shown how State Farm's survey in any way restrains trade. State Farm contends that, as part of its surveys, it attempts to determine, from all of the rates charged in the Jackson area, the "prevailing competitive costs." State Farm refers specifically to the language of § 83–11–501 which says that, "the most an insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that such vehicle or glass could be properly and fairly repaired or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured." As State Farm interprets this language, it is allowed to determine the different labor and material rates in the market area so that it will know what the lowest amount is. This court holds that this is a reasonable interpretation of the statute.

■ Finally, the plaintiffs' complaint charges that State Farm attempts to control the type and cost of replacement parts which auto body shops may use in the Jackson, Mississippi, market area. The plaintiff, Hardy Brothers, claims that it uses only original equipment parts and will not agree to use "after-market," or "non-OEM" (non-original

---

**10.** Miss.Code Ann. § 75–21–1 provides in pertinent part:

A trust or combine is a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others, when inimical to public welfare and the effect of which would be:
(a) To restrain trade.

equipment manufacturer) parts in repairs performed at their shops. Plaintiff Hardy Brothers makes a broad assertion in its answers to interrogatories that State Farm's ADCP requires body shops to use inferior parts manufactured by someone other than the original equipment manufacturer in order to reduce State Farm's costs.

A fair reading of the Repair Criteria precludes such an interpretation. Moreover, in the Hardy Brothers deposition, Jack Hardy states that he has no quarrel with State Farm regarding the use of aftermarket parts and acknowledges that Hardy Brothers often uses aftermarket bumpers. Jack Hardy stated he had heard that a shop's failure to agree to use non-OEM parts only when they are of equal quality and warranty to the original manufacturer's parts may have kept that shop off State Farm's Reference Guide, but Hardy could not recall what shop this was or who made this statement. This assertion is, of course, hearsay, unsupported by any affidavit, deposition, or other evidence.

State Farm submits that this case is not one of trademark infringement or monopolization by the use of a trademark as was *Cotton's Holsum Bankers, Inc. v. Smith's Bakery, Inc.*, 241 Miss. 317, 130 So.2d 570 (1961). Moreover, says State Farm, this is not a case involving a restrictive covenant in an employment agreement as was *Frierson v. Sheppard Building Supply Co.*, 247 Miss. 157, 154 So.2d 151 (1963). Finally, argues State Farm, this case is not an antitrust claim under state or federal law. Instead, State Farm submits, the restraint of trade allegation is merely an attempt to establish some statutory violation without having to rely wholly upon the plaintiffs' assertions that State Farm's ADCP violates Miss.Code Ann. § 83–11–501.

■■■■ This court agrees with State Farm's contention that the plaintiffs have failed to show that State Farm's ADCP operates as a restraint of trade. In determining whether certain concerted action violates § 1 of the Sherman Antitrust Act, there is a presumption in favor of the "rule-of-reason" standard. *Business Electronics Corporation v. Sharpe Electronics Corporation*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).

Because every contract or business combination in some sense restrains trade, a "rule-of-reason" that examines the impact on competition has generally been the arbiter of conduct alleged to violate § 1. *Jayco Systems v. Savin Business Machines Corporation*, 777 F.2d 306, 317 (5th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 30 (1987). Unfair competition is not illegal *per se*. *Union City Barge Lines v. Union Carbide Corporation*, 823 F.2d 129, 138 (5th Cir.1987), citing *Northwest Power Products, Inc. v. Omark Industries, Inc.*, 576 F.2d 83 (5th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979).

The Fifth Circuit has established a two-part test for unfair competition cases under § 1 of the Sherman Antitrust Act. The plaintiff must show:

(i) a market effect that would be prohibited under the law of mergers; and

(ii) other conduct by the defendants that threaten Sherman Act values.

*Id.* at 138, citing *Associated Radio Service Company v. Page Airways, Inc.*, 624 F.2d 1342, 1351 (5th Cir.1980), citing *Omark*, 576 F.2d at 89.

The plaintiffs in the case *sub judice* have made no such showings whatsoever. Other than unsupported allegations, the plaintiffs have shown no market effect such as loss of business, no *per se* activities such as price fixing or exclusive reciprocal dealings, nor have plaintiffs shown how State Farm's ADCP violates Sherman Act values. Hence, this court is unable to ascertain any genuine issue of material fact under federal law with regard to the plaintiffs' restraint of trade claims.

■■■■ Under Mississippi law, it is incumbent upon the plaintiffs to show that the ADCP is in some way hostile to public welfare in order to establish the foundation for a restraint of trade or antitrust claim. *Jackson v. Price*, 140 Miss. 249, 105 So. 538 (1925). The evidence before this court indicates that the public welfare has been well served by State Farm's ADCP. Moreover, where a court finds no federal antitrust violations, allegations of state law antitrust violations may be dismissed as well. *Walker v.*

*U–Haul Co. of Mississippi,* 734 F.2d 1068, 1070 n. 5 (5th Cir.1984) (treating Mississippi and federal antitrust claims as analytically identical). Hence, this court finds that the plaintiffs' restraint of trade claims are without merit.

#### f. *Tortious Interference*

■ While the plaintiffs' complaint includes the assertion of tortious interference with business opportunities, the plaintiffs have offered no serious argument on this point. Mississippi recognizes malicious interference with the "right to pursue a lawful business, calling, trade or occupation" as a tort. *Protective Service Life Ins. Co. v. Carter,* 445 So.2d 215, 216 (Miss.1983). An action for interference with the contract ordinarily lies when "a party maliciously interferes with a valid and enforceable contract ... causing one party not to perform and resulting in injury to the other contracting party." *Mid–Continent Telephone Corp. v. Home Telephone Co.,* 319 F.Supp. 1176, 1199 (N.D.Miss.1970). In this situation, the tort only arises if there is interference with the contract between plaintiff and some third party.

■ Mississippi also recognizes a cause of action for interfering with a prospective business advantage. *Protective Service Life Ins. Co. v. Carter,* 445 So.2d at 216–17. The elements of this tort are:

(1) that the acts were intentional and willful;

(2) that they were calculated to cause damage to the plaintiffs in their lawful business;

(3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

(4) that actual damage and loss resulted.

*Galloway v. Travelers Insurance Company,* 515 So.2d 678, 682–83 (Miss.1987), quoting *Carter,* 445 So.2d at 217 and *Irby v. Citizens National Bank of Meridian,* 239 Miss. 64, 121 So.2d 118, 119 (1960).

■ The plaintiffs have made no showings that State Farm acted in concert with any third party in order to dissuade that third party from performing an existing contractual obligation. Instead, the plaintiffs' complaint infers that the very act of informing its insureds about the ADCP constitutes the tortious interference. However, Mississippi case law refers to the contractual arrangement itself as the right protected by law, not some general expectation of a possible contractual arrangement. *Protective Service Ins. Co. v. Carter,* 445 So.2d at 219.

The evidence submitted to this court shows that two State Farm insureds sought repair services from Hardy Brothers despite being told that Hardy Brothers was not included in the Reference Guide. Plaintiffs have not shown that State Farm's ADCP was adopted for the purpose of causing the plaintiffs harm or that the plaintiffs have suffered actual harm as a result of any intentional or willful acts by State Farm or as the result of State Farm's adoption of the ADCP. There is simply not enough offered by the plaintiffs on this point to support a claim of intentional interference with any of the plaintiffs' contractual rights or business relations.

### VII. *CONCLUSION*

The United States Supreme Court expressed the standard for granting summary judgment in *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon a motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

■ Hence, in response to a motion for summary judgment, the non-moving party is required to respond with proof of a *prima facie* case, sufficient for a jury to enter a

verdict in his favor. *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122–1123 (5th Cir.1988), citing *Celotex Corporation v. Catrett,* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated otherwise, when the moving party has carried the Rule 56(c) burden, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment in any case where a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. *Celotex Corporation v. Catrett; Moore v. Mississippi Valley State University,* 871 F.2d 545, 549 (5th Cir.1989).

This court has carefully reviewed each of the plaintiffs' claims and finds them to be without merit. There is no issue of material fact upon which trial may be conducted which is not already precluded by the plaintiffs' failure to present proof of a *prima facie* case sufficient for a jury to enter a verdict in their favor on any claim raised in the complaint. Therefore, the plaintiffs' complaint is hereby dismissed. The motion for summary judgment submitted by State Farm Insurance Company is well taken and the same is hereby granted. Costs shall be assessed to the plaintiffs.

A separate judgment shall be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**